IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:05-476-RBH |
| | ) | |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | |
| | ) | |
| FRANK LOCASCIO, | ) | |
| ELIA FIATA, | ) | |
| LOUIS PALADINO, | ) | |
| JOSEPH LOCASCIO. | ) | |
| _____ | ) | |

Pending before the court is Defendants Frank LoCascio and Joseph LoCascio's joint "omnibus motion" [Entry # 226/228], which was filed on July 10, 2006. The court heard oral arguments regarding the "omnibus motion" on September 14, 2006 and ruled on most of the issues contained therein. However, the court took some matters under advisement and requested that the parties provide additional briefing on those specific issues. The parties have now responded to the court's request and after carefully considering the supplemental briefs, the original motion and memoranda, oral arguments of counsel, and the record in this case, the court rules as follows:

**Motion for Severance**

The LoCascio defendants move for a severance from co-defendants Louis Paladino and Elia Fiata on four grounds: (1) <u>Bruton</u> issues with the anticipated introduction of Defendant Paladino's statements to law enforcement; (2) the alleged prejudicial nature of the obstruction of justice charges; (3) the potential favorable testimony from Defendants Paladino and Fiata; and (4) prejudicial spillover. The court will address each in turn, however, before delving into the issues at hand, the court should initially note that Rule 8(b) of the Federal Rules of Criminal Procedure allows defendants to be joined and charged in the same indictment if they are alleged to have participated in the same act or transaction

or in the same series of acts or transactions constituting an offense or offenses. Also, under Rule 14(a) of the Federal Rules of Criminal Procedure, severance of joined defendants is allowed where joinder prejudices a defendant by compromising a specific trial right or where the jury is prevented from making a reliable judgment concerning guilt or innocence. United States v. Strickland, 245 F.3d 368 (4th Cir. 2001). However, it is well settled that "[b]arring special circumstances, individuals indicted together should be tried together." United States v. Brugman, 655 F.2d 540, 542 (4th Cir. 1981); accord United States v. Rivera, 412 F.3d 562, 571-72 (4th Cir. 2005). Indeed, unless "a miscarriage of justice" will occur, there is a presumptive expectation that co-defendants should and will be tried together. Richardson v. Marsh, 481 U.S. 200, 206-11 (1987); United States v. Samuels, 970 F.2d 1312, 1314 (4th Cir. 1992). This presumption that co-defendants should and will be tried together "is particularly so if a conspiracy is charged." United States v. Parodi, 703 F.2d 768, 779 (4th Cir. 1983)

**A)    Bruton Issue**

The LoCascio defendants first argue in their motion that the court should sever them from Defendant Paladino because he allegedly made post-conspiracy statements to law enforcement which may incriminate him, and more importantly, implicate the LoCascios. The LoCascio defendants argue that admission of these statements in a trial of all of the co-defendants would be unfairly prejudicial to them and would present a Bruton[1] issue. The Government argues in its memorandum in opposition to the "omnibus motion" that any possible prejudice to the LoCascios from the use of Defendant Paladino's statements at trial could be cured by redacting the names of the co-defendants. Indeed, this

---

[1] In Bruton v. United States, 391 U.S. 123, 135-136 (1968), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment is violated–and severance is required–when a nontestifying co-defendant's confession naming the defendant as a participant in the crime is admitted, even if the jury is instructed to consider the confession only against the confessing co-defendant.

2

remedy has been approved by the Fourth Circuit. <u>United States v. Vogt</u>, 910 F.2d 1184 (4th Cir. 1990); <u>United States v. Akinkoye</u>, 185 F.3d 192 (4th Cir. 1999). However, in some circumstances, even if the non-confessing co-defendants' names are redacted, severance is still required "if . . . it is clear that a particular defendant is implicated. . . ." <u>Akinkoye</u>, 185 F.3d at 197.

At the hearing on this issue, the court pointed out to all counsel that it had not been provided with the statements of Defendant Paladino that allegedly presented a <u>Bruton</u> issue. All counsel indicated that they had received a copy of the statements, yet omitted to provide a copy to the court with their memoranda. The court explained to counsel that it would be virtually impossible to make a decision regarding whether or not there was a <u>Bruton</u> issue with Paladino's statements and whether or not redaction would be an appropriate remedy until the court could actually review the statements. The court was thereafter provided a copy of Paladino's statements. The next issue that arose at the hearing was that counsel could not agree as to who had the burden of specifically designating which portions of the statements should be redacted, if in fact there were actually <u>Bruton</u> issues with Paladino's statements. Because of such, the court requested the parties to submit supplemental briefing on this issue immediately. The parties have since complied with the court's request and have filed supplemental briefs on this issue.

In its supplemental brief, the Government now acknowledges that it bears the burden of redacting Paladino's statements. Furthermore, the Government submitted a letter to the court dated September 19, 2006 in which it suggests its proposed redaction.[2] The defendants have now responded to the Government's proposed redaction and indicate that they still have <u>Bruton</u> objections. The

---

[2] The court has instructed the Clerk of Court to file said letter and counsel are reminded that any correspondence with the court should be filed.

Government is hereby **ORDERED** to file a reply to the defendants' response within one (1) day from the date this Order is entered. Thereafter, the court will resolve any remaining contested Bruton concerns.

**B)     Obstruction of Justice Charges**

Defendants next argue that severance is required because the obstruction of justice charges were misjoined in the indictment and would unduly prejudice Francis and Joseph Locascio's defense and result in a "miscarriage of justice." The Government contends that, under Rule 8(a) of the Federal Rules of Criminal Procedure, an indictment may charge a defendant with several offenses that are "based on the same act or transaction, or are connected with or constitute part of a common scheme or plan." Additionally, Rule 8(b) provides that the indictment may charge two or more defendants if they are alleged to have participated in the same series of acts or transactions constituting an offense and "all defendants need not be charged in each count."

Courts have generally held that offenses may be joined in the same indictment where they are logically related to each other. United States v. Hirschfield, 964 F.2s 318, 323 (4th Cir. 1992). This promotes judicial economy and saves precious judicial and prosecutorial time." United States v. Stokes, 211 F.3d 1039, 1042 (7th Cir. 2000).

This court finds that judicial economy is served by joining the obstruction of justice allegations with the remaining charges in the indictment. Here, the obstruction of justice allegations relate to the other allegations in the indictment, as they involve the alleged withholding of a letter characterized by the Government as the "smoking gun letter" between Defendants Paladino and Frank LoCascio regarding the alleged conspiracy. Any prejudice suffered by LoCascio and Paladino in having the matters involving the alleged obstruction of justice joined with the other charges at trial is outweighed

by the judicial economy in trying related charges in the same trial. However, a curative instruction can be given to the jury, if requested, to give separate consideration to the evidence offered against each defendant.

**C)    Favorable Testimony from Co-defendants**

The LoCascio defendants also argue that they should be tried separately from the remaining co-defendants on the grounds that they need the testimony of co-defendants Paladino and Fiata to help establish their innocence. Counsel for Frank LoCascio states in an affidavit that he has personally conferred with the attorney for Paladino, Gregory McCollum, and the attorney for Fiata, Flora Edwards, and has been advised that if their clients were called on behalf of Frank and Joseph LoCascio during a joint trial, they would invoke their privilege against self-incrimination, however, counsel indicates that if they were called in a separate trial they would provide favorable testimony on behalf of Frank and Joseph LoCascio.[3]

The court will note that the Fourth Circuit has held that a "defendant's attempt to have [his] trial severed from that of a co-defendant is far less likely to succeed when the request is based on the asserted need for a co-defendant's testimony." United States v. Reavis, 48 F.3d 763, 767-68 (4th Cir. 1995). However, when a motion to sever is made on this ground, the moving defendant must show: "(1) a bona fide need for the testimony of his co-defendant, (2) the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege, (3) the substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such testimony." Parodi, 703 F.2d at 779. If these elements are met, the court must then consider an additional five (5) factors, which are

---

[3] The court notes that there have been no affidavits of counsel for Defendants Paladino and Fiata presented, nor have those defendants themselves presented affidavits or made statements of affirmation concerning this issue at any hearing.

noted below.

Upon consideration of the aforementioned factors, the court must first note that it has concerns with the second element of the Parodi test as it relates to the alleged favorable testimony of Defendant Paladino on behalf of the LoCascio defendants. At the hearing on this motion, it was the court's understanding that counsel for Paladino agreed with statements made by counsel for Frank LoCascio, that is his client may offer favorable testimony on behalf of the LoCascios, but only if the case was severed and Paladino's trial went *before* the LoCascio defendants. In such a situation, "the requirement of a showing of willingness to testify if there is a severance *is not met* when that offer to testify is further conditioned on the co-defendant's case being tried first." Id. (emphasis added). If this court were to accept Paladino's condition, it would be creating "a situation where, following his own trial, the witness would be more inclined to 'throw a bone' to his co-defendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying." Reavis, 48 F.3d at 767.

Regardless of the problems the court perceives with the second element of the Parodi test, the court finds that it should still look at the purported favorable testimony of Defendants Paladino and Fiata. The LoCascio defendants essentially assert that Paladino's testimony would be that he "has set up MRI operations with doctors in more than a dozen states. His testimony would, thus, support Francis LoCascio's belief that the arrangements made with Dr. Woodward were perfectly legal and appropriate." As for Defendant Fiata, the LoCascio defendants state that he would testify that "Joseph LoCascio had nothing to do with the day-to-day operations of Preferred Imaging and that during that time he was in New York." The LoCascio defendants also state that Fiata would testify that "Joseph LoCascio had no knowledge of whether claims paid by Medicare or Medicaid, which were presented based upon the MRIs performed by Preferred Imaging were 'medically necessary' or that the rent or

medical director fees paid by Preferred Imaging were unlawful or inappropriate."

After considerable review, this court is reluctant to conclude that the above-noted testimony has an exculpatory nature and effect, the fourth element of the Parodi test. This is because the Fourth Circuit has found that to satisfy this element, "the showing must be such as to establish that the moving defendant 'will be unable to obtain a fair trial without severance, not merely that a separate trial would offer him a better chance of acquittal,' or an opportunity to proffer evidence which 'merely contradicts part of the Government's proof.'" Id. at 780. However, assuming arguendo, that this potential testimony by Paladino and Fiata does have an exculpatory nature and effect, and the LoCascio defendants made a satisfactory showing under the first four elements of the Parodi test, this court must still go on to "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of testimony; (3) pay close attention to judicial administration and economy; (4) give weight to the timeliness of the motion; and (5) consider the likelihood that the co-defendant's testimony could be impeached." After considering these latter principles, this court finds that it must deny the LoCascio defendants' motion for severance. Notably, the court has considered the effect a severance of this case would have on judicial economy, as it would require, to some extent, duplication of what all counsel have argued is an unusually complex trial. The court must note that it has also considered the Government's arguments regarding the likelihood that any potential testimony could be impeached and finds them persuasive. After considering all of the abovementioned factors, the court finds the motion to sever on this ground should be denied.

**D)    Prejudicial Spillover**

The LoCascio defendants also assert that a severance is justified to eliminate "prejudicial spillover." They appear to contend that they were led into the alleged conspiracy by the co-defendants

7

and that this also supports their being tried separately. However, the Government indicates that it will adduce evidence that both LoCascios were willing and knowledgeable participants in the alleged conspiracy, including Joseph's alleged involvement in the decision where to locate the business and the financial arrangements.

The Fourth Circuit addressed the "spill-over" argument that the LoCascio defendants rely on in United States v. Smith, 44 F.3d 1259 (4th Cir. 1995). In Smith, the defendant claimed that evidence presented by his two co-defendants at trial involving allegations of fraud "spilled over" to unfairly implicate him as he was only involved in a minor portion of the alleged fraudulent scheme. Id. at 1266. The Court, noting the Government's broad discretion to join defendants who qualify under Rule 8, explained:

> In deciding whether to grant a Rule 14 motion, the district court is given broad discretion in weighing the inconvenience and expense to the government and witnesses in conducting separate trials against the prejudice to the defendants caused by a joint trial. Because joint participants in a scheme often will point the finger at each other to deflect guilt from themselves or will attempt to lessen the importance of their role, a certain amount of conflict among defendants is inherent in most multi-defendant trials. In order to justify a severance, however, joined defendants must show that the conflict is of such magnitude that "the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty."

Id. at 1266-67 (quoting United States v. Becker, 585 F.2d 703, 707 (4th Cir.1978)). Likewise, in United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir.1992), two defendants argued that the evidence against them was "significantly weaker than the evidence against the other defendants" and that their convictions may have been based on "the strength of 'spillover' evidence." The Fourth Circuit concluded that the record failed to indicate that either defendant was convicted based on "spillover" evidence because "the district court properly instructed the jury that it was not to consider the evidence against one defendant when deciding upon the guilt or innocence of another defendant, and there is no suggestion in the record that the jury failed to follow this instruction." Id. After review, this court finds

that a severance on this ground should be denied.

For all of the reasons stated above, and in the Government's memoranda, the motion to sever on multiple grounds is **DENIED** at this time. However, should the court, after review of the proposed redacted Paladino statements, find that redaction is an insufficient remedy for any potential Bruton issues, the court may reconsider severance or may order complete exclusion of the Paladino statements from a joint trial.

### Bill of Particulars and the Motion for Particular Discovery

A bill of particulars is generally only appropriate when an indictment fails to provide adequate information to a defendant for the charges to be understood and for unfair surprise to be avoided at trial. United States v. American Waste Fiber Co., 809 F.2d 1044, 1047 (4th Cir. 1987). Ordinarily the function of a bill of particulars is not to provide detailed disclosure of the Government's evidence in advance of trial but to supply any essential detail which may have been omitted from the indictment, and it is committed to the sound discretion of the court. United States v. Anderson, 481 F.2d 685 (4th Cir. 1973). Where the Government maintains an open file policy, a bill of particulars is usually unnecessary as the defendant has an adequate source of information. United States v. Schembari, 484 F.2d 931, 935 (4th Cir. 1973); United States v. Duncan, 598 F.2d 839, 849 (4th Cir. 1979).

This court initially addressed the defendants' first request for a bill of particulars at a hearing on April 27, 2006. It was the court's understanding that this request was rendered moot by the Government's concessions at that hearing. However, the defendants raised this issue again and the court denied their request for a bill of particulars in an Order entered on June 16, 2006 [Entry #219]. In the current "omnibus motion," the defendants once again raise the request for a bill of particulars. At the hearing on the current motion, the defendants appeared to alternatively request that the

Government identify the specific medical records it intends to use as exhibits in the trial of this case. The court took the matter under advisement and requested that counsel immediately submit additional briefing on this issue. At this time, counsel has complied with the court's request and have submitted supplemental briefs on the present issue.

The defendants argue in their supplemental brief that the Government should indicate the medical records that it intends to use as exhibits at trial because as a matter of due process, they are entitled to knowledge of the evidence that will confront them at trial. The defendants indicate that they need to know which medical records the Government intends to use as exhibits so that they may have medical doctors and other experts examine them with regard to the alleged instances of healthcare fraud.[4]

In its supplemental brief, the Government argues that it has met its discovery obligations under Rule16 of the Federal Rules of Criminal Procedure through its "open file" policy and through production of discovery in a timely and reasonable fashion.[5] The Government argues that the defendants' request for the identity of the specific medical records it will rely on at trial is not within the disclosure requirements of Rule 16 and would have the practical effect of revealing the Government's trial strategy.

Defendants acknowledge that the Government has in fact maintained an open file policy,

---

[4] On this same note, the defendants argue in their "omnibus motion" that the indictment does not apprise the defense as to which MRI claims the Government believes were the subject of fraudulent billing.

[5] The court should note that the defendants complained at the April 27, 2006 hearing that the Government had provided several compact discs of discovery which were word searchable, however, they were having problems searching the discovery through this format. At that hearing, the court requested, and the Government agreed, to provide the defendants with its paper index of the discovery discs.

however, they point out that the file consists of over 10,000 pages with over 3,000 patients' medical records. The defendants argue that even with every reasonable effort and considerable due diligence, they cannot adequately prepare for trial without knowing *which* of the 3,000 patients' records the Government intends to use in its case in chief.

The court notes that the defendants are not charged with the substantive violation of healthcare fraud. They are simply charged with *conspiracy* to commit healthcare fraud under 18 U.S.C. § 1347. However, in the indictment, it is alleged at ¶ 17 that the defendants caused "the United States to pay claims for healthcare service based on false claims and false statements that the services were provided in compliance with all laws regarding the provision of healthcare services." It is also alleged in the same paragraph that the defendants "knowingly presented and caused to be presented false and fraudulent claims for payment and approval to the United States, including claims for reimbursement for services rendered to patients unlawfully referred to Preferred Imaging by Woodward in exchange for kickbacks and illegal reimbursements" from the defendants. Furthermore, at ¶ 18, the indictment goes on to allege specific amounts for the claims paid by Medicare, Medicaid and Blue Cross Blue Shield of South Carolina. At ¶ 20(b), as an object of the conspiracy, the indictment alleges the defendants conspired to "knowingly and willfully executed a scheme to defraud the United States Government and private insurers, in that the defendants [ ], through their agreed upon compensation arrangement with David Michael Woodward, *provided* and arranged for the provision of *medically unnecessary* MRI tests, for which payment was requested and received from governmental and private third-party insurers . . . in violation of 18 U.S.C. § 1347." (Emphasis added).

As noted above, the Government opposes a bill of particulars or alternatively for discovery of the particular patient's records in the group of 3,000 individual records it intends to use at trial. It

11

argues it has fully complied with Rule 16 because it has maintained an "open file." Usually extensive voluntarily disclosure or an "open file" policy obviates the need for court ordered discovery or a bill of particulars. However, "the volume of discovery materials in a complex case may itself impede rather than assist the defense in its understanding of the government's case. Merely to be shown thousands of documents without any direction as to the significance of the various pieces of paper may not comport with fairness." United States v. Modi, 197 F.Supp.2d 525, 530 (W.D.Va. 2005). In Modi, the indictment charged a conspiracy to commit mail fraud against defendants who allegedly used the mails to execute a scheme to defraud the United States and Medicare by means of false pretenses and representations in which they caused to be sent claims for medical treatments for which there was allegedly no medical necessity and/or which were outside the bounds of medical practice. The Modi court denied a bill of particulars, however, such was because the Government had provided the defendants with charts showing the specific patient at issue, the dates of services, the suspect treatments, and the amounts paid.

In the case at bar, knowledge of specific patient records the Government may use in its case in chief, would enable defendants' counsel to fulfill their duty of exercising reasonable diligence in possibly preparing an adequate defense mitigating guilt. This would allow defendants the opportunity of medical expert review if they chose to do so. Without this specific knowledge, the defendants would be left to guessing which of the 3,000 patient records the Government would use at trial. Even with the most reasonable diligence such would be impracticable and akin to "finding a needle in a haystack."

Additionally, pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963) and its progeny, due process requires disclosure of any evidence "favorable" to the accused that is possessed by the prosecution and is material to his guilt or defense. Arguably, if a patient's records revealed that the

MRI test was medically necessary, this could be evidence that may be exculpatory to some degree.

After considerable deliberation, this court finds that basic fairness, an opportunity for adequate preparation for trial, avoidance of surprise or unfair advantage, as well as the elimination of possible mid-trial recesses, all weigh in favor of the defendants' request that the Government identify the medical records it intends to use at trial. While the court acknowledges the Government's argument regarding its "open file" policy and how it has complied with Rule 16, the court also understands defense counsels' dilemma with costs concerns of having a medical expert review all 3,000 patient files in hopes that they stumble across the ones being used by the Government.

In the exercise of discretion and with the concerns noted above, the court hereby **ORDERS** additional discovery as follows: the Government shall disclose to the defense those specific patient records upon which it may use in its case in chief by Friday, September 29, 2006. Should the Government's counsel need more time to identify those records, they are to notify the court and the court will set a later date for disclosure. Both the number of patient records, as well as the timeliness of the Government's response, will dictate whether the court will consider a continuance of this case to afford defense counsel time for review.[6]

For the reasons stated above, the defendants' additional discovery request for the identity of medical records to be used at trial is **GRANTED** and the motion for a bill of particulars is **DENIED**. Furthermore, all motions not specifically addressed herein or at the hearing on September 14, 2006 are hereby **DENIED**.

---

[6] The court notes that several attorneys may have scheduling conflicts with other courts, and particularly, counsel for Frank LoCascio is scheduled to appear in New York on October 3, 2006 for a four (4) week trial. Said counsel has requested a continuance of this matter and such is under advisement.

**IT IS SO ORDERED**.

                                                s/ R. Bryan Harwell
                                                R. Bryan Harwell
                                                United States District Judge

September 27, 2006
Florence, South Carolina